IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHELLE OLSON,

        Plaintiff,                    No. CIV S-05-2057 KJM

    vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.              <u>ORDER</u>

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion for summary judgment.

/////
/////
/////
/////
/////

1

I. Factual and Procedural Background

In a decision dated May 19, 2005, the ALJ determined plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. The ALJ found plaintiff has severe impairments of bipolar disorder and hepatitis C but these impairments do not meet or medically equal a listed impairment; plaintiff is not totally credible; plaintiff has the residual functional capacity to perform light work with some exertional and non-exertional limitations; plaintiff can perform her past relevant work; using Medical-Vocational Rule 202.21 as a framework for decision-making, there are a significant number of jobs in the national economy that plaintiff could perform; and

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

plaintiff is not disabled.  Administrative Transcript ("AT") 20-21.  Plaintiff contends the ALJ accorded improper weight to the opinion of a treating psychiatrist, incorrectly assessed plaintiff's residual functional capacity and erroneously relied on the testimony of a vocational expert.

II. Standard of Review

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).  Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

/////

/////

/////

III.  Analysis

    A.  Treating Psychiatrist's Opinion

Plaintiff contends the ALJ improperly rejected the opinion of treating psychiatrist Dr. Adeyemo.  The weight given to medical opinions depends in part on whether they are proffered by treating, examining or non-examining professionals.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence.  Id. at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

In a medical report dated January 24, 2005, plaintiff's treating psychiatrist, Dr. Adeyemo, rated plaintiff's ability in various areas of occupational, performance and personal/social adjustments as "fair" in eight categories and poor in five categories.  AT 595-600.

The ALJ assigned only "some weight" to these limitations, correctly noting the doctor had treated plaintiff for only a few months and indicated he did not know the plaintiff's response to treatment. AT 18, 595. The ALJ also rejected Dr. Adeyemo's assessment as inconsistent with the prior treatment notes, a finding supported by substantial evidence. AT 18, 471-472, 608-609. The ALJ also factored into his consideration of Dr. Adeyemo's assessment the incongruency with that of Dr. Daigle, a consulting psychiatrist, who conducted a complete psychiatric examination. AT 18, 414-419. The reasons given by the ALJ for rejecting Dr. Adeyemo's assessment are specific and legitimate. There was no error in the weight accorded by the ALJ to Dr. Adeyemo's opinion.

B. Residual Functional Capacity

Plaintiff contends the ALJ committed error in assessing plaintiff's mental and physical residual functional capacity. Social Security Ruling 96-8p sets forth the policy interpretation of the Commissioner for assessing residual functional capacity. SSR 96-8p. Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities").

With respect to plaintiff's mental residual functional capacity, plaintiff contends the ALJ committed error by finding plaintiff was only slightly limited in the ability to maintain concentration and attention whereas in the body of the decision the ALJ found plaintiff has moderate deficiencies in concentration, persistence or pace. AT 18-19, 21. These findings are not inconsistent as claimed by plaintiff. The findings with respect to "moderate" deficiencies as set forth in the body of the decision were conducted in the context of the general evaluation of mental impairment required under 20 C.F.R. § 416.920a(c). See SSR 96-8p (limitations identified under paragraph "B" criteria are not residual functional capacity assessment). These findings are consistent with the rating of functional limitations assessed by the state agency physician, as noted by the ALJ. AT 18, 439. Also consistent with the findings of the same state

5

1  agency physician, the ALJ assessed plaintiff's mental residual functional capacity as being only
2  slightly limited.  AT 21, 443-444, 540-541.

3  As to plaintiff's physical residual functional capacity, plaintiff contends the ALJ
4  should have included limitations related to plaintiff's fatigue.  In November 2003, consulting
5  physician Dr. Sharma performed an internal medicine examination of plaintiff and assessed
6  plaintiff with no physical limitations other than that plaintiff "may have problems sustaining
7  activity beyond two hours at a time without a break."  AT 408.  The ALJ did not expressly adopt
8  this limitation but did give substantial weight to the state agency physician who based the
9  assessment of plaintiff's residual functional capacity, in part, on Dr. Sharma's assessment.  AT
10 17, 422, 563.  The state agency physician specifically noted plaintiff could perform light work
11 even with the limitation of taking normal and customary breaks after two hours of work.  AT
12 422.  This finding also is consistent with the SSR 96-9p,[2] which contemplates that normal breaks
13 include morning, lunch and afternoon breaks at approximately two-hour intervals.  There was no
14 error in the ALJ's assessment of plaintiff's residual functional capacity.

15  C. Medical-Vocational Guidelines and Vocational Expert

16  Plaintiff also contends the ALJ erroneously relied on the testimony of a vocational
17 expert.  Noting that plaintiff had additional exertional and/or non-exertional limitations that
18 limited her ability to perform light work, the ALJ used the Medical-Vocational Guidelines[3] as a

---

[2] Social Security Rulings "represent precedent final opinions and orders and statements of policy and interpretations that we have adopted." 20 C.F.R. § 402.35(b)(1). Social Security Rulings are "binding on all components of the Social Security Administration." Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); cf. Silveira v. Apfel, 204 F.3d 1257, 1260 (9th Cir. 2000) ("This court defer[s] to Social Security Rulings ... unless they are plainly erroneous or inconsistent with the Act or regulations").

[3] The Medical-Vocational Guidelines ("the grids") are in table form.  The tables present various combinations of factors the ALJ must consider in determining whether other work is available.  See generally Desrosiers, 846 F.2d at 577-78 (Pregerson, J., concurring). The factors include residual functional capacity, age, education, and work experience.  For each combination, the grids direct a finding of either "disabled" or "not disabled."

(more)

1 framework for decisionmaking, utilizing a vocational expert in so doing. AT 20, 21. The ALJ
2 posed several hypotheticals to the vocational expert. AT 653-656.

3 The hypothetical presented to the vocational expert and ultimately relied on by the
4 ALJ was accurate, detailed and supported by the record. AT 21, 653; see Tackett v. Apfel, 180
5 F.3d 1094, 1101 (9th Cir. 1999) (ALJ's depiction of a claimant's hypothetical disability must be
6 accurate, detailed, and supported by the record). The ALJ properly used the Medical-Vocational
7 Guidelines as a framework in conjunction with the vocational expert's testimony to determine
8 there was a significant number of jobs that plaintiff can perform. See Young v. Sullivan, 911
9 F.2d 180, 185 (9th Cir.1990) (permissible for ALJ to rely on the Guidelines as a framework for
10 decision making). Because the vocational expert identified 152,040 jobs[4] available to plaintiff,
11 substantial evidence supports the ALJ's finding that plaintiff is not disabled. See Moncada v.
12 Chater, 60 F.3d 521, 524 (9th Cir. 1995) (2,300 jobs in the county and 64,000 nationwide are
13 sufficient); Barker v. Secretary HHS, 882 F.2d 1474, 1478-79 (9th Cir. 1989) (1,200 jobs in
14 Southern California are sufficient).

15 /////
16 /////
17 /////
18 /////
19 /////
20 /////

---

There are limits on using the grids, an administrative tool to resolve individual claims that fall into standardized patterns: "[T]he ALJ may apply [the grids] in lieu of taking the testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations." Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5, 103 S. Ct. 1952, 1955 n.5 (1983).

[4] With the nonexertional limitations identified by the ALJ, the vocational expert testified there would be a thirty percent erosion, i.e., seventy percent of the jobs previously identified would still be available. AT 21 (Finding no. 11); AT 653-654.

1. The ALJ's decision is fully supported by substantial evidence in the record and based on the proper legal standards. Accordingly, IT IS HEREBY ORDERED that:

 1. Plaintiff's motion for summary judgment or remand is denied, and
 2. The Commissioner's cross-motion for summary judgment is granted.

DATED: September 26, 2007.

_____
U.S. MAGISTRATE JUDGE

006 olson.ss